IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDWIN ISHOO, M.D.,

    Plaintiff,

  -vs-                                                                                                  No. Civ. 07-0542 LH/LFG

R. JAMES NICHOLSON, SECRETARY OF
DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Docket No. 22), filed March 31, 2008. The Court, having reviewed the Motion, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds that the Motion is well taken in part and will be **granted in part** and **denied in part**.

In his First Amended Complaint for Civil Rights and Privacy Act Violations (Complaint) (Docket No. 3), filed July 10, 2007, Plaintiff Edwin Ishoo, M.D., alleges Title VII discrimination based on nationality and color/race, Iranian and Middle Eastern respectively; Title VII retaliation; and Privacy Act violations against Secretary Nicholson, who subsequently has been replaced by James B. Peake, M.D., as Secretary of the Department of Veterans Affairs (VA). As set forth in his Complaint, Dr. Ishoo maintains he was a joint employee of the Veterans Administration from early September 2005 through March 1, 2006. He was recruited and hired, pursuant to a contract, by the

University of New Mexico, Health Sciences (UNM). In addition to being a UNM faculty member, under an agreement[1] between UNM and the New Mexico Veterans Affairs Health Care System the University assigned Dr. Ishoo to provide full-time services as Chief of ENT, Head and Neck Surgery at the Albuquerque VA facility.

Following a confrontation on February 24, 2006, between Dr. Ishoo and a VA staff nurse, to which VA police were summoned and subsequently prepared a preliminary investigation form, the Chief of Surgery at the VA advised Dr. Ishoo not to return to the VA. In early March 2006, the VA provided UNM with a copy of the preliminary investigation police report without Dr. Ishoo's consent. In October 2006, the VA disclosed the report to the New Mexico Medical Board (NMMB), a state licensing agency, again without Plaintiff's consent and with no request for the information having been made by the NMMB pursuant to the Freedom of Information Act. In June 2007, UNM used the preliminary investigation police report as its basis for not renewing Dr. Ishoo's contract.

The VA moves to dismiss or, alternatively, for summary judgment on the Title VII claims on grounds that it was not Dr. Ishoo's employer. Defendant also maintains that Plaintiff has not stated a claim for a Privacy Act violation.

To bring an action against the VA under Title VII, Dr. Ishoo must show that he was an "employee" of Defendant. *See Kelley v. City of Albuquerque*, 542 F.3d 802, 807-08 (10th Cir. 2008). Title VII defines the term "employee" as "an individual employed by an employer," 42 U.S.C. § 2000e(f), and the issue here is whether the VA can be held to be Plaintiff's "employer" so

---

[1] UNM and the VA entered into a contract on June 29, 2001, under which the University would provide ENT services at the VA. Although the contact expired in June 2004, both institutions continued to operate under the agreement during the time period at issue here.

as to trigger the requirements of Title VII, *see Bristol v. Bd. County Comm'rs*, 312 F.3d 1213, 1216 n.2 (10th Cir. 2002) (en banc) (discussing issue with regard to accommodation requirements of the Americans with Disabilities Act). Under the joint-employer test, "a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers." *Id.* at 1218. Thus, while acknowledging that the entities are separate and independent, the Court will treat them as joint employers if they "'share or co-determine those matters governing the essential terms and conditions of employment.'" *Id.* (quoting *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1360 (11th Cir. 1994)). In other words, the Court "look[s] to whether both entities 'exercise significant control over the same employees,'" *id.* (quoting *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997)), and "[m]ost important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances," *id.* at 1219. Determining whether an entity retains sufficient control to be considered a joint employer is "essentially a factual question," *Virgo*, 30 F.3d at 1360, and as a general rule, it is an "issue for the jury," *Bristol*, 312 F.3d at 1221.

The VA argues that it did not co-determine matters governing the essential terms and conditions of Dr. Ishoo's employment and therefore cannot be considered his joint employer. It is true that Plaintiff's employment contract was with the University, which paid his salary, withheld taxes, and administered leave and retirement programs and other employee benefits. More importantly, however, regarding the terms and conditions of Plaintiff's employment, the agreement between UNM and the VA specified that any UNM physician providing services to the VA be approved by the VA Professional Standards Board, Medical Executive Board, and Chief Executive Officer. Additionally, UNM employees at the VA were required to comply with appropriate, applicable policies, procedures, regulations, and by-laws of the VA. Furthermore, the VA had the

3

right to require dismissal from the VA facility of any UNM employee by reason of unsatisfactory performance at the VA or for any other reasonable reason that it considered to be objectionable.

Thus, despite the fact that the contract between the institutions may have provided that UNM, as the contractor, and its employees, agents and subcontractors should not be considered VA employees for any purpose, the Court must find that there is at the very least a question of fact for the jury regarding the VA's status under the joint-employee theory. Indeed, the case of *McMullin v. Ashcroft*, 337 F. Supp. 2d 1281 (D. Wyo. 2004), is strikingly similar to the facts at issue here. In *McMullin*, the United States Marshal Service (USMS) was found to exercise control over the essential terms and conditions of a Court Security Officer's employment sufficient to be considered his "employer" for purposes of the Rehabilitation Act, even though he was directly employed by a private corporation that contracted with the USMS to provide court security at a federal building. *Vann v. White*, No. 03-4009-JAR, 2003 WL 21715328 (D. Kan. July 21, 2003), a case relied upon by Defendant, is easily distinguishable, however. There, the Army, exercised little if any control and supervision over the work of heavy equipment operators and automotive workers provided under a contract with Raytheon Aerospace, LLC. The Army was not involved in selecting individuals for layoff, recall, and rehire or terminating the employment of the plaintiffs. Defendant's reliance on an independent contractor analysis is equally unavailing and the Court must deny the Motion as to the Title VII claims.

Defendant also moves for dismissal of Plaintiff's Privacy Act claims and the Court will grant the Motion in this regard. Dr. Ishoo brings privacy right claims based on incomplete and inaccurate information contained in the preliminary investigation form and improper disclosure of that form to UNM and the NMMB, in violation of 5 U.S.C. § 552a(e)(6) and (10). Although these subsections

are excepted from the general exemptions allowed by promulgation of rules as provided in § 552a(j),[2] the VA has exempted the preliminary investigation form, along with all Police and Security Records, from the civil remedies provided under § 552a(g). *See* 38 C.F.R. § 1.582(d).[3]

---

[2]  The Privacy Act provides in relevant part:

**(j) General exemptions.**--The head of any agency may promulgate rules, . . . to exempt any system of records within the agency from any part of this section *except subsections* (b), (c)(1) and (2), (e)(4)(A) through (F), *(e)(6)*, (7), (9), *(10)*, and (11), and *(i)* if the system of records is-

. . .

**(2)** maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, . . . and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section.

5 U.S.C. § 552a(j) (emphasis added).

[3]  Regulations regarding Exemptions promulgated by the VA provide in relevant part:

(d) Exemption of Police and Security Records. VA provides limited access to one Security and Law Enforcement System of Records, Police and Security Records--VA (103VA07B).

(1) *The investigations records and reports contained in this System of Records are exempted [pursuant to 5 U.S.C. 552a(j)(2) of the Privacy Act of 1974] from Privacy Act subsections . . . (g)* . . . .

(2) These records contained in the Police and Security Records--VA (103VA076B) are exempted for the following reasons:

. . . .

(ii) The application of Privacy Act subsections . . . *(g)* could interfere with investigative and enforcement proceedings, threaten the safety of individuals who have cooperated with authorities, constitute an unwarranted invasion of personal privacy of others, disclose the identity of confidential sources, reveal confidential information supplied by these sources, and disclose investigative techniques and procedures.

. . . .

Several courts have engaged in extensive analysis of legislative intent and history to arrive at the conclusion that agencies may not so exempt themselves from civil liability, even though subsection (g) is not excepted from regulatory exemption under subsection (j). *See, e.g., Tijerina v. Walters*, 821 F.2d 789 (D.C. Cir. 1987); *Nakash v. U.S. Dep't of Justice*, 708 F. Supp 1354 (S.D.N.Y. 1988). This Court, however, finds nothing ambiguous in the plain language of the statute and declines to stray from it. *See Shearson v. U.S. Dep't of Homeland Sec.*, No. 1:06 CV 1478, 2007 WL 764026, at *12 (N.D. Ohio Mar. 9, 2007) (also noting that "Congress clearly contemplated which types of enforcement remedies would be available" by excepting subsection (i), the *criminal* enforcement provision, from (j)(2)); *see also Kimberlin v. U.S. Dep't of Justice*, 788 F.2d 434, 436 n.2 (7th Cir. 1986) ("Information systems can be exempted from the civil remedies section of the Privacy Act, 5 U.S.C. § 552a(g)."); *Ryan v. Dep't of Justice*, 595 F.2d 954 (4th Cir. 1979). Thus, Plaintiff has no private right of action under the Privacy Act and these claims must be dismissed.

WHEREFORE,

**IT IS HEREBY ORDERED** that, Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Docket No. 22), filed March 31, 2008, is **DENIED IN PART AND GRANTED IN PART**. It is **DENIED** as to Plaintiff's **Title VII claims**. It is **GRANTED** as to Plaintiff's **Privacy Act claims.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

---

38 C.F.R. § 1.582(d) (emphasis added).